HENRY, APPELLEE, *v.* THE PAGE DAIRY CO., APPELLANT.

(Decided May 27, 1940.)

*Mr. Harry S. Bugbee,* for appellee.
*Mr. Edwin J. Lynch* and *Mr. John W. Hackett,* for appellant.

OVERMYER, J.   Appellee, as plaintiff, filed this action in the Common Pleas Court against The Page Dairy Company to enforce the provisions of two repurchase agreements entered into between herself and the defendant company relating to her purchase in 1919 and 1920 of a total of eighty shares of the preferred capital stock of that company.   On trial, plaintiff recovered a verdict and judgment for the full purchase price she had paid for the stock, together with dividends, a total of $9,280.

Defendant appeals on questions of law and assigns as errors, the admission of certain evidence, failure to direct a verdict for defendant, refusal to give certain special charges, and the overruling of defendant's motions for new trial and for judgment notwithstanding the verdict.

The facts are undisputed, and briefly are as follows: The plaintiff is a woman of more than ordinary business talents and experience and at the time of trial was 69 years of age, divorced from her husband many

years previously, and has one married daughter. In 1919 she learned of the preferred stock of defendant company, paying eight per cent yearly dividends, and after making inquiry regarding the same of business friends and of the president of the company, she decided to purchase some of the stock. The evidence does not show any solicitation of her by any one on behalf of the company, nor that any effort was then being made by the company to dispose of any of its stock. On December 30, 1919, she entered into a contract with the defendant company for the sale to her of fifty shares of the preferred stock at $100 per share, and on that date paid to the company $5,000 for the same. On July 1, 1920, plaintiff purchased an additional thirty shares of the same stock on the same terms and paid $3,000 therefor. The purchases of stock were made directly from the company, through its officers, and it was issued from the company treasury.

On the occasion of the first purchase, plaintiff represented to the officers of the company that the income from the stock was absolutely necessary for the support of herself and her two sisters, one of whom was an invalid, and both of whom were dependent upon her for support, and that she would not purchase the stock necessarily as a permanent investment, or unless adequately protected against loss of income and principal. The company thereupon offered to and did sign a repurchase contract prepared by plaintiff herself and typed in the office of the secretary and a director of the company, and signed by the president and secretary of the company, in the following words:

"In consideration of Maude Wood Henry of Toledo, Ohio, having this day purchased of us fifty (50) shares, par value one hundred ($100) dollars each of the preferred stock of The Page Dairy Company of Toledo, Ohio, and paid us therefor five thousand dollars ($5,000) being certificate No. 558, dated Dec. 30, 1919,

we hereby agree to redeem the whole or any part of same at any time, upon receiving ten (10) days written notice from her, and agree to pay therefor the sum paid us by her for same, one hundred dollars ($100) per share, five thousand dollars ($5,000) in all, together with any portion of earned dividend at time of withdrawal. *This contract shall apply to heirs and assigns.* The Page Dairy Company, by H. A. Page, President, Stephen Brophy, Secretary. Toledo, Ohio, Dec. 30, 1919.''

On July 1, 1920, when plaintiff made her second purchase of the stock (thirty shares), an identical agreement, except as to amount, was entered into, and it was then that the last sentence, above italicized, was placed in and as a part of the second contract before it was signed, and also added, at plaintiff's request and by the officers of the company and by their consent, to the first contract executed on the previous December 30th.

From the respective dates of purchase the plaintiff received her eight per cent annual dividends, paid semi-annually, up to 1938, the company not paying the semi-annual dividend payable July 1, 1938, nor any since then. On July 2, 1938, plaintiff elected to withdraw her money, enforce the provisions of her repurchase agreements, and so advised the company, offering to transfer and deliver back the stock. The company refused and this action followed.

The only assigned error we find necessary to discuss is the question whether the court erred in not directing a verdict for defendant, or, failing to do so, erred in overruling the motion for judgment notwithstanding the verdict, upon the ground urged that the plaintiff did not exercise her rights under the contracts within a reasonable time.

The record shows that in June 1938 the company

found it necessary to make a loan and execute a mortgage on its properties to secure it, and by the conditions of the mortgage, was required to pass dividends.

Who must be the loser under the terms of these plain, simple, unambiguous and unqualified contracts?

Many pages of the briefs are devoted to a discussion of cases construing contracts or options of repurchase of stocks where the time was not fixed by the contract, or where the expression "at any time" was employed. The rule of "reasonable time under all the circumstances" clearly applies in such cases. But in no case do we find the expression, or its equivalent, here employed, *viz.:* "This contract shall apply to heirs and assigns," an expression which clearly supplements the earlier provision "at any time" appearing in the contracts. The cited cases are therefore of little aid.

Plaintiff's "heirs" would not be determinable until her decease, which event has not yet occurred. It would therefore seem clear and certain that the contracts were to run the course of the plaintiff's lifetime, at least. And with that provision in the contracts, inserted by the company at plaintiff's request on the company's own typewriters, willingly and without protest, by what rule of law is the provision unenforceable? Would it be because of a change of financial condition of one of the parties, and if so, which party, the company or the purchaser? Is it against public policy; if so, in whose favor does public policy intervene? Should the law arbitrarily nullify a clear provision of a legal contract where there is no claim of fraud, no ambiguity or uncertainty, a contract willingly and openly made by both parties?

Defendant's interpretation of the last sentence of the contracts, as to "heirs and assigns," is thus set forth in its brief, *viz.:*

"We contend that this sentence broadens the con-

tract, but does not lengthen it as to time. In other words, without this clause, the contracts were to be considered as running for a reasonable time, and the addition of these words did not lengthen the term. They merely broaden it to the extent that heirs and assigns might take advantage of its terms.''

When, may we inquire, can the ''heirs and assigns take advantage of its terms''? Surely the ''heirs'' could not during plaintiff's lifetime, and no one claims she ever assigned the contracts, though she might yet do so. Quoting further from the brief: ''It means merely that more persons are included in the words 'Maude Wood Henry'.''

True, and the additional persons included are her ''heirs and assigns,'' classes not determinable during her lifetime, beyond which time we need not inquire since she brought the action.

It is argued that plaintiff's sisters died some ten or twelve years ago, and are therefore not now her dependents and could not be her ''heirs,'' and that the daughter is married and living on a farm and supported by her husband. The daughter can still become her natural ''heir,'' however, or other relatives could, in case of her decease, and the ''assigns'' of the contract could have been anyone, any time.

Much complaint is made because of the failure of the trial court to sustain a motion to strike certain matters from the petition, and of the admission of evidence on trial as to those allegations, the claim being such allegations were ''irrelevant, immaterial, prejudicial and evidentiary.'' It is true the petition might well have pleaded only the contracts, demand and refusal, and then met defensive matters, if any, by reply. On trial, plaintiff could well have introduced her contracts, evidence of demand and refusal, and rested, meeting defensive matter on rebuttal. However, in this case, if

plaintiff was entitled to recover, she could recover the sum she had paid for the stock, plus unpaid dividends, no more and no less, and the court so instructed the jury. Therefore, the matters complained of could in no manner enhance the verdict, nor could these matters in any manner determine the legal interpretation of the contracts. The only question submitted to the jury was the question of "reasonable time," and this issue is clearly a law question, determined, for the purposes of this case, by the language of the contracts. The matters complained of on this point are therefore not prejudicial.

We find no prejudicial errors appearing in the record and the judgment will be affirmed.

*Judgment affirmed.*

CARPENTER and LLOYD, JJ., concur.